**PAUL L. BREED**, OSB #83161
plb@plbreed.net
500 Yamhill Plaza Building
815 SW Second Ave.
Portland, Oregon   97204
Telephone: (503) 226-1403
Facsimile: (503) 223-1516

    Attorney for Plaintiff

**COURTNEY ANGELI,** OSB No. 941765
courtney@baaslaw.com
**MATT DUCKWORTH,** OSB No. 022994
matt@baaslaw.com
**BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP**
321 SW Fourth Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 974-5015
Facsimile: (971) 230-0337

    Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### PORTLAND DIVISON

| | |
|---|---|
| JEFFREY R. PETERSON,<br><br>    Plaintiff,<br><br>v.<br><br>ACUMED   LLC, a Delaware Corporation,<br><br>    Defendant. | No.   CV 10-586-HU<br><br><br><br>PROPOSED AMENDED PRETRIAL ORDER |

Page –1–          PROPOSED AMENDED PRETRIAL ORDER

The following Amended Pretrial Order is lodged pursuant to L.R. 16.6.

**A.     Nature of the Action.**

Plaintiff, Jeffrey Peterson, alleges a claim for violation of Oregon's wage payment statute, ORS 652.140 et seq. Defendant Acumed LLC ("Acumed") denies plaintiff's claims and has asserted affirmative defenses.  Trial will be to a jury.  The parties have consented to trial by a magistrate judge.

**B.     Subject Matter Jurisdiction.**

This court has jurisdiction by reason of diversity of citizenship; 28 U.S.C. § 1332. Plaintiff and defendant were, at the time the complaint was filed, citizens of Oregon and Delaware, respectively.  The amount in controversy exceeds $75,000.

**C.     Agreed Facts.**

1.     Peterson is a former employee of Acumed who worked as its controller for the last seven years of his employment. In this role, he reported directly to Acumed's General Manager and also to the Chief Financial Officer of a related company, Colson Associates, Inc. ("Colson"). As controller, Peterson was part of Acumed's executive team.

2.     Throughout 2009, Peterson began to perceive that Colson's CFO, Louhon Tucker, was not pleased with some of his work.  In late 2009, Peterson told Acumed's Director of Global Human Resources, Noel Van Dyke, that he was seriously considering resigning because he anticipated that he would not be able to satisfy Tucker.  He asked about the possibility of receiving severance pay.

3.     In January 2010, Mr. Peterson conveyed to Ms. Van Dyke that he wanted to move forward with his plan to resign.  She notified Acumed's President, David Jensen, of Mr.

Peterson's decision.   Jensen met with Peterson on January 12 to discuss his departure.   What transpired during that discussion is a matter of dispute.

    4.    On January 14, Acumed requested Peterson to continue working until March 5 which would take them through Acumed's annual audit which Peterson agreed to do.

    5.    As of the termination of Peterson's employment, his monthly salary was $11,700. The cost of Peterson's COBRA premiums was $1,159.98 per month.

**D.**    **Claims and Defenses**

### CLAIM ONE

Plaintiff contends:

    1.    A binding agreement was reached during the January 12 meeting between Peterson and Jensen.

    2.    Alternatively, a binding agreement was reached during the January 14 meeting during which Acumed asked Peterson to continue working until March 5.

    3.    Acumed breached its agreement to pay Peterson severance according to the agreement reached during the January 12 meeting and/or the January 14 meeting.

    4.    Peterson relied to his detriment on the representations made to him regarding the payment of severance pay.   Acumed is promissorily estopped from asserting that the January 12 offer was too indefinite to constitute an enforceable contract.

    5.    Acumed is promissorily estopped from asserting that there is no consideration to support a binding agreement.

    6.    Plaintiff contends that there was no promise of confidentiality, either express or implied, as part of the severance agreement.

7. To the extent that defendant is able to show that the parties anticipated the agreement to be confidential, such a promise would not have been a material condition of the agreement the breach of which would excuse defendant's failure to perform.

8. To the extent that defendant is able to show that the parties anticipated the agreement to be confidential, plaintiff was excused from performing that condition by defendant's anticipatory breach at the meeting which took place on January 14, 2010.

9. Peterson relied on Acumed's January 12 promise when he decided to reject the March 5 severance offer.

10. The failure to pay was willful in that defendant knew that it was not paying severance pay intended not to do so and acted as a free agent.

11. Peterson is entitled to an award of not less than $76,000 for unpaid severance benefits.

12. Plaintiff is entitled to an award of reasonable fees and costs pursuant to ORS 652.200 and prejudgment interest on all sums from the time they were due at the rate of 9%.

**DEFENSES**

Defendant contends:

1. Acumed denies all of plaintiff's contentions.

2. Peterson fails to state a claim upon which relief can be granted; Peterson and Acumed did not enter into an enforceable contract on January 12, 2010 to pay Peterson six months of severance pay and six months of paid COBRA-contination benefits in exchange for his resignation because Colson had not previously approved any severance pay offer. Thereafter, Colson never approved a promise to pay Peterson six months of severance pay and six months of paid COBRA-continuation premiums in exchange for Peterson's resignation.

3. Peterson and Acumed did not enter into an enforceable contract on January 14, 2010 to pay Peterson six months of severance pay and six months of paid COBRA-contination benefits in exchange for his resignation because Colson had not previously approved any severance pay offer. Even if, on January 14, Peterson and Acumed somehow entered into an agreement, Acumed satisfied the terms of any such agreement reached on that date.

4. Acumed's alleged January 12 and/or January 14 promises to pay six months of severance pay and six months of paid COBRA-continuation premiums were not supported by consideration because Peterson had already indicated his desire and intention to resign.

5. Acumed's alleged January 12 promise to pay Peterson a severance "better than Karsten" was not previously approved by Colson and, in addition, was not sufficiently definite to constitute an offer.

6. Acumed's alleged January 12 promise to pay Peterson a severance "better than Karsten" was not supported by consideration because plaintiff had already indicated his desire and intention to resign.

7. Acumed's alleged January 12 and/or January 14 promises to pay Peterson six months of severance pay and six months of paid COBRA-continuation premiums were not sufficiently definite to constitute an offer.

8. Even if, on January 12, 2010, Peterson and Acumed somehow entered into a contract to pay six month's of severance and six months of paid COBRA-continuation premiums in exchange for Peterson's resignation, on January 14 Acumed and Peterson mutually rescinded such a contract and thereafter entered into an entirely new arrangement, which Acumed honored but Peterson rejected.

9. Peterson understood during the meeting on January 14 that any severance payment he might receive would be conditioned on him working through completion of Acumed's financial audit, which would be done by March 5, 2010. During the meeting, Peterson asked for a written guarantee of severance pay. Ms. Van Dyke and Mr. Jensen told him that Acumed could not provide such a guarantee because any offer of severance pay had to be previously approved by Colson/Mr. Tucker, because Colson/Mr. Tucker had not yet approved an offer of severance pay, and because an actual offer of severance pay would take into account Mr. Tucker's assessment of plaintiff's performance from January through March 5, 2010 on Acumed's financial audit.

10. Acumed paid Peterson his regular wages in full up to and including his work on March 5, 2010.

11. On March 5, 2010 Acumed offered Peterson a severance package that included five months of severance pay and continued COBRA coverage so long as Peterson did not obtain other employment during that period, as well as some additional benefits. Acumed also requested that Peterson release it from all claims. The proposed agreement for severance pay, which was previously approved by Colson, contained a clear and concise confidentiality provision providing that "Employee shall keep the terms of this Agreement and Release strictly confidential and shall tell no one except persons who have a bona fide reason to acquire such knowledge." Peterson did not accept the offer and it expired on March 26, 2010.

12. After Peterson had announced his upcoming departure from Acumed, but while he was still employed by Acumed, Peterson disclosed to numerous friends, family members and persons still employed by Acumed the terms of a severance agreement he believed he would have with Acumed upon the actual separation of his employment, including the amount of severance pay.

13.     Peterson took into his personal possession, without permission, former Acumed employee Sue Mockridge's separation agreement.

14.     While Peterson was still employed by Acumed, he presented a résumé to at least one prospective employer that falsely described his job title, responsibilities and accomplishments at Acumed.

15.     When Peterson announced his intention to voluntarily resign his employment, he discussed the possibility of a severance pay agreement with Ms. Van Dyke and later discussed in general the terms of a potential severance pay agreement with Mr. Jensen. Ms. Van Dyke informed Peterson that no commitments regarding severance pay could be made by any Acumed manager without the prior approval of Colson Associates. The terms of any severance pay agreement or potential severance pay agreement were mutually understood to be confidential.

16.     In light of his inequitable conduct described in paragraphs 12 through 15, Peterson's claim for relief is barred by the doctrine of unclean hands.

17.     After acquired evidence of Peterson's breach of confidentiality and résumé fraud renders Peterson's alleged severance pay contract unenforceable because Acumed would have not offered severance to Peterson if it had known of his misconduct.

18.     Peterson's breach of confidentiality constituted an anticipatory breach and thus renders plaintiff's alleged severance pay contract unenforceable.

19.     Acumed timely paid all wages earned and owing to Peterson at the time of his termination.

20.     Even if Acumed failed to timely pay all wages earned and owing to Peterson, Acumed's conduct was not willful.

21. Acumed denies that Peterson is entitled to attorney's fees, costs, prejudgment interest or any other award.

E. **OTHER LEGAL ISSUES**

The parties agree that, if appropriate, any pre-judgment interest to which plaintiff may be entitled shall be calculated by the Court, post-verdict.

F. **AMENDMENTS TO PLEADINGS**

Acumed proposes amending the affirmative defenses of unclean hands and after acquired evidence to incorporate other evidence of Peterson's misconduct discovered during discovery, including Peterson's résumé fraud.  (*See* Defenses, ¶¶ 13, 16.)   Peterson objects to this amendment.   Acumed will address Peterson's objection in a motion in limine.

Dated this 8th day of July 2011.

_____

For Court Use Only

The foregoing Amended Pretrial Order is:

____   Approved as lodged.

____   Approved as amended by interlineation and the pleadings are amended accordingly.

SO ORDERED this __ day of _____, 2011.

_____
Honorable Dennis Hubel
United States District Court Magistrate Judge